IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**RUTH ANN STONE**                                                                            **PLAINTIFF**

**V.**                     **CASE NO. 1:05CV102**

**JAMES DAMONS, in his individual capacity
and CITY OF CORINTH, MISSISSIPPI**                                             **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the court on the defendants' motion [57-1] for summary judgment. The court has reviewed the briefs and exhibits and is prepared to rule.

This action is brought under 42 U.S.C. §1983 alleging violations of plaintiff Stone's First and Fourth Amendment rights by Officer James Damons while he was working as a police officer for the city of Corinth, MS, as well as for arbitrary governmental action in violation of the Fourteenth Amendment and the state law torts of false imprisonment and assault. The defendants include the City of Corinth, MS, and James Damons, in his individual capacity.

Around 9:00 pm on September 17, 2004, Officer James Damons and Officer Adam Rencher received a call about a prowler behind a local restaurant, the Rib Shack. Upon arrival, the officers encountered Jehiel Stone, a minor. After speaking with Jehiel, the officers learned that he had previously had a dispute with his father. Jehiel was placed in Officer Damons' patrol car and his father was contacted to come pick him up. Shortly thereafter, the officers learned from Jehiel that Mrs. Stone was observing their encounter in the parking lot because Jehiel and his mother had originally planned to get some ice cream at Baskin Robbins to help him calm

1

down after the dispute with his father.  However, instead of having ice cream, Jehiel decided to take a walk behind some of the restaurants in the area.   Mrs. Stone remained in her vehicle and trailed Jehiel from a distance, attempting to keep him in her line of vision.  Officer Rencher drove over to Mrs. Stone's parked car to discuss the situation.  Mrs. Stone was informed that her husband had been called and that the officers were waiting on him to arrive.

Officer Damons then pulled up to Mrs. Stone's and Officer Rencher's vehicles.  Officer Damons was smoking a cigarette while Jehiel was in the backseat of the patrol car.  Mrs. Stone told Officer Damons not to smoke around her son because he is asthmatic and she thought the smoke might cause him to have an asthma attack.  At this point the facts are disputed as Officer Damons asserts that he put out the cigarette upon request while Mrs. Stone asserts that Officer Damons became animated, telling her that he suffered from asthma as well and the smoke did not bother him.  Both accounts end with Officer Damons extinguishing the cigarette.

Officer Damons then approached Mrs. Stone's vehicle and asked her for identification.  Mrs. Stone began searching through her purse.  Officer Damons stated that he saw her driver's license immediately, but Mrs. Stone claims to have been unable to locate it.  She began taking cards out of her wallet and began tossing them towards the passenger's side of her vehicle.  Mrs. Stone eventually located her driver's license and Officer Stone called the information in to dispatch.  While Officer Damons was in the process of calling in Mrs. Stone's identification, Officer Rencher drove back to the other side of the building because Jehiel's father would be looking for them there.  After the information check was complete Officer Damons returned to Mrs. Stone's vehicle.  Mrs. Stone took back her identification and tossed it toward the passenger side with the cards she had previously tossed.  At this point Officer Damons requested that Mrs.

2

Stone step out of her vehicle. Mrs. Stone claims that she requested Officer Rencher be called back to the scene while Officer Damons denies that Mrs. Stone made that request. Mrs. Stone would not get out of her vehicle and Officer Damons informed her that she would be charged with resisting arrest. Officer Damons attempted to open her car door but it was locked, so he then attempted to unlock the car door and grab the handle. At the same time, Mrs. Stone began rolling up her car window. Officer Damons grabbed Mrs. Stone's left arm to keep her from continuing to raise the window and Mrs. Stone began using her right hand to raise the window. Mrs. Stone maintains that Officer Damons then said, "You'll do what I say when I say it," and proceeded to pepper spray her.

After being pepper sprayed, Mrs. Stone closed her eyes and stopped struggling. Officer Damons opened her car door, and Mrs. Stone went to the ground and was handcuffed. Officer Damons called Officer Rencher back to the scene and Mrs. Stone was placed in the back of his patrol car for transport to the police department. Mrs. Stone was charged with disorderly conduct and resisting arrest. A hearing was held and the charges were dismissed on March 15, 2005.

## ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of

the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 120 S.Ct. at 2110.

The defendants assert multiple grounds on which the plaintiff's claims against Officer Damons and the City of Corinth must fail. The defendants maintain that Officer Damons is entitled to qualified immunity, that Officer Damons had reasonable suspicion and probable cause to arrest the plaintiff and did not use excessive force in doing so, and that the speech alleged in the plaintiff's First Amendment claim did not cause her arrest. The defendants also maintain that the City of Corinth was not negligent in its screening, hiring, or supervision of Officer Damons and that any allegations based on respondeat superior must fail as a matter of law. The defendants further asserts that any state law claims are barred by the exemptions of the Mississippi Tort Claims Act.

1. Officer James Damons

In addressing qualified immunity issues, this court proceeds in three steps. First, the court must ask whether the plaintiff has alleged a violation of a constitutional right. *Aucoin v. Haney,* 306 F.3d 268, 272 (5th Cir. 2002). Second, this court must inquire whether the constitutional right was clearly established at the time of the alleged violation. *Id.* If the court answers yes to both questions, it then asks whether the official's conduct was objectively reasonable in light of that established constitutional right. *Id.*

a. Fourth Amendment

The plaintiff has alleged that the defendant had no reasonable suspicion or probable cause

to arrest the plaintiff, and that these actions were in violation of the Fourth Amendment. The Supreme Court has stated that articulating precisely what "reasonable suspicion" and "probable cause" mean is not possible because they are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 1661 (1996). The Court has described reasonable suspicion as a particularized and objective basis for suspecting the person stopped of criminal activity. *Ornelas*, 517 U.S. at 696. Probable cause exists where known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found. *Id.* The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. *Id*.

The plaintiff has alleged that Officer Damons attempted to detain her without reasonable suspicion, and *Terry v. Ohio* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880 (1968) has clearly established that police must have reasonable suspicion supported by articulable facts before police are permitted to stop and briefly detain persons for investigative purposes. The final question that remains is whether Officer Damon's conduct was objectively reasonable in light of this established constitutional right. While much of the parties' testimony is consistent, there are areas in which the factual accounts conflict, making a factual determination extremely difficult. However, the court takes note of the fact that in her deposition testimony, Mrs. Stone stated that prior to Officer Damons making the request for Mrs. Stone to step out of her vehicle that he

5

asked her for her identification.  Mrs. Stone first stated that she could not find her identification.  While looking for her identification, Mrs. Stone stated that she began to "flick" other cards that were in her wallet onto the seat and floor of the passenger side of her car before finally handing him her identification.   When he returned with her identification she "flicked" it onto the passenger side with her other cards.  At that point he asked her to step out of the vehicle.  In light of this somewhat unusual behavior displayed in front of the officer, as well as the fact that a minor was going to be released into her custody, this court finds that it was objectively reasonable for Officer Damons to ask Mrs. Stone to step out of her vehicle.

The plaintiff also alleges that her subsequent arrest was without probable cause.  The right to be free from arrest without probable cause is a clearly established right.  *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998).  In light of this established constitutional right, the court must determine if Officer Damons' actions were reasonable in light of this right.

As previously stated, the principal components of a determination of reasonable suspicion or probable cause are the events which occurred leading up to the stop or search.  The court must view these facts from the standpoint of an objectively reasonable police officer to determine the existence of reasonable suspicion or probable cause.  In this case, Mrs. Stone refused to step out of her vehicle at Officer Damons' request.  Mrs. Stone's deposition testimony indicates that Officer Damons was not yelling or out of control at the time of the request.  During her testimony she said, "He just stated it extremely firmly and said, 'I'm going to have to ask you to get out of the vehicle.'" She also claims to have stated that she wanted to wait for the other officer or her husband to arrive but that he insisted that she step out of the vehicle.  When the officer attempted to unlock and open her car door, Mrs. Stone began to roll up her car window

6

and engaged in a struggle, using her right hand to roll up the window after the officer prevented her from using her left hand. However, Mrs. Stone did stop after Officer Damons used his pepper spray. In light of her behavior and the physical altercation prior to her arrest, this court finds that an objectively reasonable police officer would find the existence of probable cause.

Mrs. Stone also alleges a Fourth Amendment violation by the officer's use of excessive force during her arrest. To state a claim for excessive force, the plaintiff must show that she 1) suffered some injury which 2) resulted from force that was clearly excessive to the need for force; 3) the excessiveness of which was objectively unreasonable. *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998). When examining the propriety of qualified immunity from excessive force claims, the court is faced with the unusual circumstance that the standard for stating a claim --- the objective reasonableness of the force exerted, coincides in large part with the inquiry for determining qualified immunity --- the objective reasonableness of the officer's conduct. *Heitschmidt*, 161 F.3d at 839.

A plaintiff alleging an excessive force violation must show that she has suffered "at least some injury." *Flores v. City of Palacios*, 381 F.3d 391, 397 (5th Cir. 2004). Mrs. Stone has alleged that she was pepper sprayed, and that her arm was bruised as a result of the struggle with Officer Damons. However, the court finds that the force used was not excessive to the need for force, nor was the force objectively unreasonable. In her deposition Mrs. Stone indicates that she attempted to prevent Officer Damons from unlocking and opening her car door. During the struggle Officer Damons proceeded to pepper spray Mrs. Stone, and only then did Mrs. Stone cease struggling. She then stated, "I heard him unlock the door and the door opened and he pulled me from the vehicle. I just kind of slid out. And it wasn't like he had to really, like, pull

7

me from the vehicle. He just kind of — his pulling was kind of an indication of where I was to go." Mrs. Stone lay still after she went to the ground and Officer Damons placed his knee on her back to cuff her. The plaintiff alleges no further physical force after being handcuffed, and in light of the struggle that occurred and her refusal to stop struggling prior to being pepper sprayed, this court finds that his actions were objectively reasonable under the circumstances.

b. First Amendment

The plaintiff alleges that Officer Damons arrested her in retaliation for her requesting that he not smoke in front of her son. In order to establish a First Amendment claim, a plaintiff must prove that 1) the defendant was acting under color of state law; 2) the plaintiff's activities were protected under the First Amendment; and 3) the plaintiff's exercise of the protected right was a substantial or motivating factor for the defendant's action. *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996). The defendants mistakenly argue that the plaintiff's speech must be a matter of public concern before the speech is entitled to protection. However, that standard applies to the speech of public or government employees, not to ordinary citizens, as is the case in the instant matter. The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. *City of Houston, TX v. Hill*, 107 U.S. 451, 461, 107 S.Ct. 2502, 2509, 96 L.Ed.2d 398 (1987). Speech is often provocative and challenging...[But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of serious substantial evil that rises far above public inconvenience, annoyance, or unrest. *City of Houston*, 107 U.S. at 461 (quoting *Terminello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed.2d 217 (1974)). The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by

8

which we distinguish a free nation from a police state. *Id.* at 462-63.

As Officer Damons was working as an on-duty police officer at the time of Mrs. Stone's arrest, it is clear that Officer Damons was working under color of state law. Mrs. Stone's speech is also clearly protected by the First Amendment as she used no threats or profanity in requesting that Officer Damons stop smoking in front of her son. However, Mrs. Stone's testimony does not present a causal connection between Mrs. Stone's statement and her arrest. Even accepting Mrs. Stone's assertion that he became belligerent at her request, her own testimony suggests that her statement was not the cause of her arrest. Namely, her testimony suggests that he stood silently as Mrs. Stone engaged in the unusual behavior of flicking cards in her wallet towards the passenger side of her vehicle and further that she began to roll up the car window on the officer's arm when he attempted to unlock her car door resulting in a struggle. This is not to say that Mrs. Stone had no right to voice her opposition to Officer Damons' request that she exit her vehicle or his smoking in front of her son; this court acknowledges that she undoubtedly had every right to voice opposition, but her own testimony shows that she moved from verbal opposition to a physical altercation. Since Mrs. Stone has not established a causal connection between her statement and her arrest, Officer Damons is entitled to immunity on the First Amendment claim as well.

2. City of Corinth

    a. Respondeat Superior

The plaintiff argues that the *Monell* rule on non-respondeat superior liability should not be applicable to the present case. The plaintiff also directs this court's attention to *Board of the County Commissioners of Bryan County, OK v. Brown*, 520 U.S. 397, 436, 117 S.Ct. 1382, 1404,

9

137 L.Ed.2d 626 (1997)(Breyer, J. dissenting) whereby the plaintiff suggests that the court find *Monell* inapplicable where the state law indicates the governmental entity, not the individual officer, should bear liability. While a creative argument, this supposition is only supported in the dissent, and the majority of the Supreme Court found that *Monell* means that municipalities cannot be liable for §1983 violations under a theory of respondeat superior. Municipalities are only liable under §1983 for acts of its employees or agents when an official acts at the direction of the municipality or pursuant to a policy or custom. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This court is bound by Supreme Court precedent, therefore the plaintiff's argument must fail.

      b. Training, Supervision, and Control

      The plaintiff also attempts to state a claim against the City of Corinth based on its failure to train Officer Damons as well as negligent failure to control his actions and failure to screen and drug test Officer Damons. The plaintiff can make a showing of official policy in at least three ways: 1) When the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is an implementation of that policy; 2)Where no official policy was announced or promulgated but the action of the policymaker itself violated a constitutional right; and 3) Even when the policymaker fails to act affirmatively at all, if the need to take some action to control agents of the local government entity "is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymaker...can reasonably be said to have been deliberately indifferent to the need." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999). While the plaintiff has stated the aforementioned claim in her complaint, beyond arguing that

*Monell* should not apply to the case at hand, the plaintiff does not address the defendants' arguments that the City of Corinth is not subject to liability as a result of official policy or custom, nor does the record reflect that the plaintiff has made any showing of policy or custom. Without evidence or argument, the plaintiff has failed to create any genuine issue as to the City of Corinth's liability for failure to train, supervise, control, or drug test Officer Damons.

      c. State Law Claims - False Imprisonment and Assault

The Mississippi Tort Claims Act provides the exclusive civil remedy against a governmental entity or its employees for acts or omissions which give rise to a suit. *L.W. v. McComb Separate Municipal School Dist.*, 754 So.2d 1136, 1138 (Miss. 1999). Any tort claim filed against a governmental entity or its employee shall be brought only under the Mississippi Tort Claims Act. *Id.*

The plaintiff brings claims based on false imprisonment and assault. The defendants assert entitlement to immunity based on Miss. Code Ann. § 11-46-9(1)(c) which states that "a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: (c) arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury."

Of note in this instance is that the charges against Mrs. Stone were subsequently dismissed, which the plaintiff contends demonstrates that Mrs. Stone was not engaged in criminal activity. However, the Mississippi Court of Appeals has found that it is not inappropriate to grant summary judgment when a defendant alleges protection under the

11

Mississippi Tort Claims Act even though the accused is found not guilty as charged.

In *Smith v. Brookhaven Police Dept.*, 914 So.2d 180 (Miss. Ct. App. 2005), Smith was ticketed for reckless driving, failure to yield to the blue lights, and speeding. He contested the tickets in municipal court and was found not guilty on all three charges. *Id.* However, when examining whether there was a material question of fact as to whether Smith was engaged in criminal activity at the time of the incident, the Court of Appeals looked to Smith's own deposition statement in which he admitted to speeding and found that the trial court was not in error in determining the existence of criminal activity. *Id.* Similarly, Mrs. Stone's deposition testimony indicates that she did resist arrest by engaging in a struggle with Officer Damons.

With further regards to her claims of assault while being arrested, the plaintiff has not shown that Officer Damons acted with reckless disregard for her safety. The Mississippi Tort Claims Act is not designed to protect officers who are grossly negligent or intentional tortfeasors. *See City of Jackson v. Perry*, 764 So.2d 373, 379 (Miss. 2000), *Bridges v. Pearl River Valley Water Supply*, 793 So.2d 584, 588 (Miss. 2001). *Bridges* acknowledges that an officer may be liable for acting in reckless disregard where an individual is not involved in criminal activity or the criminal activity has no causal nexus to the officer's conduct; however, *Bridges* also acknowledges that when there is probable cause for arrest and sufficient evidence of a causal nexus between the plaintiff's injuries and the arrest, the officer and government are immune absent a showing of malice. *Bridges*, 793 So.2d at 588. The Mississippi Supreme Court has also held that the police may exert physical force in overcoming resistance during arrest, but they may *only* use that force which is reasonably necessary to respond to the resistance encountered. *City of Jackson v. Powell*, 917 So.2d 59, ¶ 47 (Miss. 2005). Mrs. Stone's own testimony has made a

showing that her injuries were directly related to her arrest and that the officer only used enough force to stop her resistance. By her own recounting of events, Mrs. Stone was not pepper sprayed until after she and Officer Damons engaged in a physical struggle. She also acknowledges that once she stopped resisting Oficer Damons did not continue to use force with her; therefore, immunity is granted pursuant to §11-46-9(1)(c).

The City of Corinth also cites Miss. Code Ann. §11-46-9(1)(d) as another ground for immunity. The section states that "a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: (d) based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." In its analysis of the section, the Mississippi Supreme Court explained that when an official is required to use his own judgment in performing a duty, the duty is discretionary and the ordinary care standard is not applicable. *Collins v. Tallahatchie County*, 876 So.2d 284, 289 (Miss. 2004).

In determining whether the governmental conduct is discretionary, this court must consider 1) whether the activity involved an element of choice or judgment; and if so, 2) whether the choice or judgment in supervision involves social, economic, or political policy alternatives. *Bridges*, 793 So.2d at 588. Similar to the factual scenario in *Bridges*, the Chief of Police of the City of Corinth's has ultimate authority on decisions regarding training, supervision, control, and testing of police officers under Miss. Code Ann. §21-21-1. However, there are no provisions to direct the chief, just as there were no provisions to direct the District in *Bridges*. The Mississippi Supreme Court found that it followed that the District had to make a judgment as to how to

13

supervise appointed officers, thus satisfying the first prong of the test; therefore, this court finds that the Chief of Police has to make judgments about the supervision of officers thus satisfying the first prong of the test in the instant matter as well. *See Bridges* at 588-89.

The second prong involves a determination as to whether the judgment involved public policy. There is no doubt that the choice to employ and the manner of supervision of police officers does affect public policy, and the make-up of the police force inherently affects the social policy of a city. *City of Jackson v. Powell*, 917 So.2d 59, ¶ 52 (Miss. 2005). The manner in which a police department supervises, disciplines and regulates its police officers is a discretionary function of the government and thus the city is immune to suit under §11-46-9(1)(d). *Id*. ACCORDINGLY, the defendants' motion [57-1] for summary judgment is GRANTED.

A separate judgment will be issued this date in accordance with Fed. R. Civ. P. 58.

This the 2nd day of November, 2006.

                                        **/s/ Michael P. Mills**
                                        **UNITED STATES DISTRICT JUDGE**